UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **TERRELL DORSEY** | **CIVIL ACTION NO. 3:13-cv-2327** |
|     **LA. DOC #401402** | |
| **VS.** | **SECTION P** |
| | **JUDGE ROBERT G. JAMES** |
| **WARDEN SMITH, ET AL.** | **MAGISTRATE JUDGE KAREN L. HAYES** |

REPORT AND RECOMMENDATION

*Pro se* plaintiff Terrell Dorsey filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on July 23, 2013. Plaintiff is an inmate in the custody of Louisiana's Department of Corrections. He is incarcerated at the Franklin Parish Detention Center (FPDC) and he complains that his transfers from the Tensas Parish Detention Center (TPDC) to the Morehouse Detention Center and then ultimately to his present place of confinement were unlawful and have exposed him to risk of physical harm from inmates confined at FPDC.  He sued TPDC Warden Smith and FPDC Warden Chad Lee and prayed for a transfer to the Elayn Hunt Correctional Center "or any other DOC institution."

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

### Background

On May 9, 2013, plaintiff was incarcerated at TPDC. He and other inmates were suspected of having engaged in a series of fights while housed in the E Dorm.  He and others

were restrained overnight. On the following morning he was transferred to the Morehouse Detention Center where he remained until he was returned to TPDC on June 17, 2013. Upon his return to TPDC he was placed in a lock down cell over night. According to plaintiff, he was given no reason for this placement nor was he provided a disciplinary write up.

On the following day, June 18, he was summoned to Warden Smith's office and advised that his transfers and detention in lock down were the result of his participation in the E Dorm fights on May 9, 2013. Smith then advised plaintiff that he was being transferred to FPDC where his good friend, Warden Lee "would keep a close eye on [him]."

According to plaintiff, upon arriving at FPDC he learned that the other inmates involved in the May 9 disturbance had previously been transferred to FPDC and plaintiff claimed that he was for that reason in an unsafe environment. Plaintiff complained that his placement at FPDC "may" cause physical suffering and did cause mental suffering because he cannot "sleep, eat or function right."

As previously noted, plaintiff prayed for an immediate transfer.

*Law and Analysis*

*1. Screening*

As a prisoner seeking redress from an officer or employee of a governmental entity, plaintiff's complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir.1998) (per curiam). Section 1915A(b) provides for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

## 2. Liberty Interest

Plaintiff implies that his due process rights were violated by the defendants when they restrained him, then transferred him, and then confined him to lock down overnight without having filed disciplinary charges. By virtue of a valid criminal conviction and subsequent legal confinement, a prisoner loses his expectation of liberty. *See Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). Plaintiff's claim, taken as true for the purposes of this Report, fails to state a claim for which relief might be granted pursuant to 42 U.S.C. §1983 because "[t]he Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." *Sandin v. Conner*, 515 U.S. 472, 478, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). The federal jurisprudence holds, that while the states may under certain circumstances create rights that implicate Due Process, such rights are limited to freedom from restraints that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

Thus, relying on *Sandin*, the Fifth Circuit has found that "'administrative segregation, without more, simply does not constitute a deprivation of a constitutionally cognizable liberty interest.' " *Pichardo v. Kinker*, 73 F.3d 612, 613 (5th Cir.1996) (quoting *Luken v. Scott*, 71 F.3d

192, 193 (1995)) (rejecting claim that confinement in administrative segregation violated prisoner's due process rights). The Fifth Circuit has also rejected a state prisoner's claim that the additional restrictions imposed on those in administrative segregation violated his due process rights. *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir.1998) (per curiam). Therein the court stated " 'absent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life of a prisoner, will never be a ground for constitutional claim because it simply does not constitute a deprivation of a constitutionally cognizable liberty interest." ' *Id.* at 580 (quotation omitted).

In other words, when a prisoner is lawfully incarcerated, he loses many of the rights and privileges that most citizens enjoy. *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir.1997). Thus, "... mere[ ] changes in the conditions of [ ] confinement ... do not implicate due process concerns." *See Madison*, 104 F.3d at 768; see also *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir.1999) ("Inmates have no protectable property or liberty interest in custodial classifications."). Plaintiff's claims regarding his overnight restraint, his transfers and his overnight confinement in lock down are not "atypical" and thus his complaint fails to state a claim for which relief might be granted.

### 3. Transfer

Plaintiff sued Warden Smith and Warden Lee. He seeks only an immediate transfer to a DOC facility. Plaintiff is an inmate in the custody of the DOC. Under Louisiana law, "any individual subject to confinement in a state adult penal or correctional institution shall be committed to the Louisiana Department of Public Safety and Corrections and not to any particular institution within the jurisdiction of the department. The director of corrections shall

assign each newly committed inmate to an appropriate penal or correctional facility. The director may transfer an inmate from one such facility to another, insofar as the transfer is consistent with the commitment and in accordance with treatment, training and security needs established by the department..." La. R.S.15:824(A).

Plaintiff is an DOC inmate and therefore his placement is solely within the purview of the DOC. Broad discretionary authority must be afforded to prison administrators because the administration of a prison is "at best an extraordinarily difficult undertaking." *Wolff v. McDonnell*, 418 U.S. 539, 566, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935 (1974) To hold that any substantial deprivation imposed by prison authorities triggers the procedural protections of the Due Process Clause would subject to judicial review a wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts. *Meachum v. Fano*, 427 U.S. 215, 225, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948).

Prisoners simply do not have a constitutionally derived liberty interest in being held in any particular institution. *See Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976); *Olim v. Wakinekona*, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Montanye v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976); *Adams v. Gunnell*, 729 F.2d 362, 368 (5th Cir. 1984); *Oladipupo v. Austin,* 104 F.Supp.2d 643 (W.D.La. 2000). Clearly, plaintiff is not entitled to the relief prayed for and his complaint must be dismissed as frivolous.

*4. Conditions of Confinement*

Finally, plaintiff complains that he is incarcerated in an unsafe environment. Complaints about prison conditions are analyzed under the Eighth Amendment which proscribes cruel and unusual punishment. While the Eighth Amendment does not prohibit punishment it does prohibit cruel and unusual punishment including the unnecessary and wanton infliction of pain. *See Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). Additionally, while the Eighth Amendment does not mandate comfortable prisons, it does not permit inhumane ones. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir.1999).

"For conditions of confinement to rise to the level of an Eighth Amendment violation, they must be "cruel and unusual" under contemporary standards. *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society. *Id.* However, when the restrictions of confinement rise to a level that results in physical torture, it can result in pain without penological purpose constituting cruel and unusual punishment under the Eighth Amendment. *Id.*" *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). Plaintiff's complaint simply does not rise to the level of Eighth Amendment violations.

Plaintiff was transferred to his present place of confinement on June 18, 2013. He filed his complaint on July 23, 2013 and it has been pending initial review since that date. Notwithstanding his fears of reprisal on the part of the unnamed inmates, it is apparent that plaintiff's fears were unfounded. In the four months that his complaint has been pending in court, he has not alleged any physical injury resulting from his housing assignment.

The harm that resulted from plaintiff's transfer – sleeplessness, lack of appetite, and an

inability to "function right" – were *de minimis* at worst.  To rise to the level of a constitutional violation, the conditions must be " 'so serious as to deprive [plaintiff] of the minimal measure of life's necessities... '"*Alexander v. Tippah County*, 351 F.3d 626, 630 (5th Cir.2003) (quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir.1995)).  Thus,  in order to prevail on such a claim, the plaintiff must demonstrate not only that he was exposed to a substantial risk of serious harm, but that he actually suffered some harm that was more than *de minimis*. *See Siglar v. Hightower*, 112 F.3 191, 193-94 (5th Cir.1997); *Alexander  v. Tippah County, Miss*, 351 F.3d at 630-31; *Luong v. Halt*, 979 F.Supp. 481, 486 (N.D.Tex.1997).  Plaintiff has alleged no more than discomfort and inconvenience and with respect to the conditions at his present place of confinement, and that alone is insufficient to state a claim for which relief may be granted.

### *Conclusion and Recommendation*

Therefore,

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen**

7

**(14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, November 25, 2013.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE